UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

CARLOS LOPEZ,

Defendant.

11-CR-1032-15 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Carlos Lopez seeking his release from the USP Canaan federal correctional facility pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates. *See* Dkts. 2492 ("Def. Ltr."), 2497 ("Def. Mem."). The Government opposes this request. *See* Dkt. 2499 ("Gov't Mem."). For the reasons that follow, the Court denies this application.

Lopez was a central member of the Bronx Trinitarios Gang ("BTG"). Gov't Mem. at 1. As a member of BTG, Lopez participated in a litany of violent acts, including three shotgun murders in support of the gang: the double murder of 19-year-olds Raffy Tavares and Irving Cruz on a Bronx street, and the murder of Freddy Polanco in the lobby of a Bronx apartment building. Gov't Mem. at 2; *see* Dkt. 1754 ("Sent. Tr.") at 16.

Following a 12-week jury trial in autumn 2014, Lopez was convicted of multiple offenses. These included: (1) substantive racketeering and conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. §§ 1961, 1962; (2) two counts of conspiracy to murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); (3) three counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); (4) one count of assault and

attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), (5); (5) one count of conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846; (6) two counts of causing death through the use of a firearm, in violation of 18 U.S.C. § 924(j); and (7) two counts of discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). *See* Dkt. 1739. As a result of his convictions for murder in aid of racketeering, Lopez faced a mandatory sentence of life imprisonment. Sent. Tr. at 5, 16. On July 7, 2015, the Court sentenced Lopez to, principally, a term of life imprisonment. *See* Sent. Tr. at 20. Lopez's convictions were thereafter upheld by the Second Circuit. *See United States v. Sierra*, 933 F.3d 95, 99 (2d Cir. 2019).

To date, Lopez has served a little under 10 years of that sentence.

On July 21, 2020, the Court received a letter from Lopez seeking early release in light of the COVID-19 pandemic. *See* Def. Ltr. at 3. On July 24, 2020, Lopez's trial counsel filed a memorandum in support of his motion. Counsel asked the Court to reconsider Lopez's sentence based on the dangers posed by COVID-19 to prison inmates, the accessorial role Lopez played in various violent acts in furtherance of the BTG, and his personal growth since his sentencing. *See* Def. Mem. at 1–6. On July 28, 2020, the Government filed its opposition. *See* Gov't Mem. It argued that Lopez's motion should be denied because he has not exhausted his administrative remedies, he has not alleged any medical conditions that might put him at heightened risk of severe COVID-19, and a reduction in his sentence is not supported by the factors set out in 18 U.S.C. § 3553(a). *See* Gov't Mem. at 4, 6–10.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence if it finds that

2

"extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

At the threshold, the Government argues that Lopez's motion should be denied because, by failing to submit a motion seeking relief from the Bureau of Prisons before coming to this Court, he has failed to exhaust his administrative remedies. Gov't Mem. at 4; *see* 18 U.S.C. § 3582(c)(1)(A). Although it seems likely from the parties' submissions that Lopez has in fact failed to meet the exhaustion requirement in § 3582(c), the Court need not reach this argument because the Court finds that a reduction of Lopez's sentence is clearly unwarranted for other, independent reasons.

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (citing 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(c)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[1]  U.S.S.G. § 1B1.13(1)(A) & cmt.

---

[1] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *See Ebbers*, 432 F. Supp. 3d at 422–23, 427.

3

n.1(A).  The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

The first of these factors favors the early release of inmates whose medical conditions make them particularly susceptible to the COVID-19 pandemic, and to a much more limited degree, inmates without heightened vulnerabilities.  The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  The crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[2]  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, various courts, including this one, have

---

[2] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, --- F. Supp. 3d ---, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

ordered the temporary release of inmates held in pretrial or presentencing custody[3] and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences.[4]

On the other hand, Lopez is, at 32, young. And Lopez, notably, does not even claim to have any medical conditions that would put him at heightened risk were he to contract COVID-19. *See* Gov't Mem. at 6. Nor does he claim to be presently "suffering from a serious physical or medical condition" that compromises his ability to receive care within USP Canaan. His circumstances thus sharply contrast with those of various sentenced defendants whose release this Court has ordered under § 3582. *See supra* n.4. Therefore, although the pandemic itself presents extraordinary circumstances, it is far from clear that Lopez has offered a "compelling reason" for release.

---

[3] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, --- F. Supp. 3d ---, No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[4] *See, e.g.*, *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *United States v. Hernandez*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (ordering compassionate release of defendant with asthma who had served 17 months of a 24-month sentence, was scheduled for release in four months, and was not a danger to the public).

In any event, even assuming *arguendo* that this first factor does weigh in Lopez's favor, his request for a reduction in his sentence is not supported by the other factors identified by the Sentencing Commission.

The second factor—danger to the community—overwhelmingly disfavors Lopez's early release. U.S.S.G. § 1B1.13(2). As the Court reviewed in detail at Lopez's sentencing, Sent. Tr. at 17–21, Lopez's conduct in support of the BTG was vengeful, bloodthirsty, persistent, often unprovoked, and utterly unnecessary. As the Court noted, Lopez "engaged in retaliatory acts of violence, including murder," and was undeterred by brushes with the law, in that, even after a term in state prison, Lopez "continued a life of gang violence after [his] release and indeed intensified [his] violence." *Id.* at 18. Most shockingly, Lopez participated in three murders in support of the gang, each of a perceived gang rival. And while Lopez was not the gunman in any, instead playing a support or accessorial role, the Court found his participation to have been knowing, deliberate, and real. In reference to the slayings of Tavares and Cruz for example, which Lopez carried out along with his half-brother and trial co-defendant Felix Lopez-Cabrera, the Court observed at sentencing that "the videotape evidence shows unmistakably that [Lopez] [was] a knowing and active and fully supportive contributor and participant." *Id.* at 16. On these facts, the Court found a substantial risk that Lopez "would engage in violence again if [he] were at liberty." *Id.* at 19.

The Court recognizes that Lopez appears to have used his time in prison productively, for which Lopez is to be commended. He may well be wiser and more mature today than in his years associating with the BTG, as his counsel urges. Nonetheless, Lopez's history of senseless and retributive violence, including multiple murders, ultimately carries the day as to the Court's assessment of the risk he would pose to society if at liberty. The Court remains unpersuaded that

6

Lopez, if released, would not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As in other cases in which the Court has denied § 3582(c) applications on this ground, this alone justifies the denial of Lopez's request. *See, e.g.*, *United States v. Jordan*, No. 18 Cr. 834 (PAE), 2020 WL 3839629, at *4 (S.D.N.Y. July 8, 2020); *United States v. Simmons*, 15 Cr. 445 (PAE), 2020 WL 1847863, at *2 (S.D.N.Y. Apr. 13, 2020) (collecting other cases).

Independently, the Court cannot find that the application of the § 3553(a) factors favors Lopez's release at this time. Nor is the question a close one. To be sure, given the possibility that Lopez might contract COVID-19 in prison, and assuming *arguendo* that Lopez would seek out and receive superior medical care outside of federal prison than in it, one § 3553(a) factor favors release today that did not at the time of sentencing: "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). But all other § 3553(a) factors continue forcefully to favor the sentence imposed of life imprisonment. These include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). The Court incorporates by reference here its lengthy assessment of those factors at sentencing. In brief, as to the critical factor of just punishment, the Court found that Lopez's participation in three murders and other violence in support of a brutal and retributive gang powerfully justified the sentence imposed. Sent. Tr. at 20. The Court further found such a sentence necessary to vindicate the factors of specific deterrence and protection of the public. *Id.* at 18. As the Court explained:

> The fact that [Lopez] engaged in at least three incidents involving murder or attempted murder underscores the need to incapacitate [him] to protect the public. And the nature of how the murders unfolded and the total lack of conscience that

7

> they reflect shows me that there is a real risk presented to the public were [Lopez] to be at liberty any time in the foreseeable future.

*Id*. The Court's assessment at sentencing of the § 3553(a) factors remains apt. Given the gravity of Lopez's crimes, neither the strides he has made in prison, *see* Def. Mem. at 6, nor the risk that COVID-19 presents to inmates, come close to offsetting the § 3553(a) factors that make the sentence imposed the just and reasonable one.[5]

Accordingly, finding that Lopez continues to pose a danger to the public and that the § 3553(a) factors considered in combination do not support a reduction of sentence, the Court denies Lopez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

                                                            *Paul A. Engelmayer*
                                                            PAUL A. ENGELMAYER
                                                            United States District Judge

Dated: August 3, 2020
           New York, New York

---

[5] Although the gravity of Lopez's crimes would make him a poor candidate for early release even if he had served more of his sentence, the small fraction of his sentence that Lopez has served further distinguishes him from several defendants whose compassionate release the Court has granted in recent months, in recognition of the changed circumstances presented by COVID-19. These defendants had generally served a significant proportion of their sentences, such that the Court found the sentence resulting from a grant of compassionate release consistent with the § 3553(a) factors; each also had medical conditions that put them at greater risk of severe COVID-19. *See, e.g.*, *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. Apr. 10, 2020) (ordering compassionate release of defendant who had served all but seven months of an 88-month sentence); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (ordering compassionate release of defendant who had served all but 34 days of a four-month sentence); *Hernandez*, 2020 WL 1684062, at *3 (ordering compassionate release of a defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months).